2024 IL App (1st) 230881
Opinion filed: October 17, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-0881

THE PEOPLE OF THE STATE OF ILLINOIS,      )      Appeal from the
                                          )      Circuit Court of
        Plaintiff-Appellee,               )      Cook County
                                          )
v.                                        )      No. 19 MC5000186
                                          )
MEAGHAN McANDREW,                         )      Honorable
                                          )      Joel D. Buikema,
        Defendant-Appellant.              )      Judge, presiding.

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Justices Hoffman and Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1      A jury convicted defendant, Meaghan McAndrew, of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)) and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)). On appeal, defendant argues that the State failed to prove her guilty beyond a reasonable doubt, the complaint charging her with obstruction was defective, the State made improper comments during closing argument, the court erred in the giving of a jury instruction, her counsel provided ineffective assistance, and the court erred by denying her request for a continuance to file an amended posttrial motion. We affirm.

¶ 2      At trial, defense counsel made an opening statement explaining to the jury that defendant was an alcoholic who was grieving the death of her father on the date she was arrested for DUI and obstruction but that she was innocent of both offenses because she did not drive while drinking and she committed no obstructive behavior.

¶ 3    Officer Chris Pratl of the Orland Park Police Department testified that on January 12, 2019, he was on solo patrol, in full uniform and driving a marked squad car. At about 6:09 p.m., Pratl received a dispatch to respond to a noninjury accident in the area of 16040 Boardwalk Lane, which was a residential area consisting of condominium buildings, a parking lot, and a field north of the parking lot. He drove into the parking lot a couple minutes later and exited his vehicle. It was snowing outside with about one to three inches of snow on the ground. He saw three bushes on the edge of the parking lot, next to the field, which looked like they had been run over. He also saw a silver minivan in the field, with the front wheels spinning. There were two tire tracks in the snowy field leading up to the minivan.

¶ 4    Pratl walked to the minivan and observed defendant sitting in the driver's seat with her door closed. The engine was running, and the sliding door on the driver's side was open. The officer asked defendant what happened. Defendant responded that she was waiting for her aunt. He asked defendant where she was coming from. She replied that she came from seeing a movie, "A Star Born." He asked defendant for her driver's license and insurance card, which she had difficulty locating. Eventually, defendant handed him her license as well as a stack of papers, from which the officer was able to find the insurance card.

¶ 5    Pratl smelled alcohol on defendant's breath and observed that her eyes were glassy and bloodshot. There was a bottle of vodka on the front passenger seat. He asked her if she had been drinking. Defendant said no, but then she asked if she could take a shot of vodka. Based on his training and experience as a police officer, Pratl determined that defendant was under the influence of alcohol.

¶ 6    Officer Joseph Zumerling arrived on the scene. Pratl and Zumerling each asked defendant multiple times to exit the vehicle, and she continually refused. Eventually, Zumerling grabbed

defendant by her left arm and assisted her out of the vehicle. Once outside, defendant went limp. They placed her in handcuffs, told her she was under arrest, and escorted her to the squad car. At the police station, defendant refused to take a breath test to determine her blood alcohol content.

¶ 7    On cross-examination, Pratl testified that he told defendant several times, "I need you to step out" of the vehicle. He wanted defendant to exit the vehicle and come with him into the parking lot so that he could give her field sobriety tests. He eventually charged defendant with obstruction due to her repeated failure to exit the vehicle.

¶ 8    Pratl stated that, when he approached defendant's vehicle, he could see that it was stuck in the snow and incapable of moving. He did not know how long the vehicle had been stuck in the snow.

¶ 9    Officer Zumerling testified that at about 6 p.m. on January 12, 2019, he was dispatched to investigate a crash at 16040 Boardwalk Lane. When he arrived at the scene, Zumerling saw a silver minivan stuck in the middle of a grassy, snow-covered field. Pratl already was at the vehicle, speaking with the occupant. Zumerling approached and saw defendant in the front driver's side seat.

¶ 10    Zumerling smelled alcohol on defendant's breath, and she appeared slow and lethargic. Her speech was slurred, and her eyes were glassy and bloodshot. A vodka bottle was positioned on the front passenger seat.

¶ 11    Zumerling asked defendant to step out of the vehicle several times. He opined that defendant was under the influence of alcohol.

¶ 12    On cross-examination, Zumerling testified that he did not know how long the vehicle had been in the field or when defendant began drinking.

¶ 13    Pratl's dashboard camera video was admitted into evidence and played for the jury and is included in the record on appeal. Pratl's video depicts him driving his squad car down a snowy street. He turns right into a parking lot and exits the vehicle in front of a field, which is also covered in about three inches of snow. There are several bushes between the parking lot and the field; due to the darkness and the inclement weather, it is difficult to determine the condition of the bushes in the video. An automobile is sitting in the field about 30 feet away, with two tracks leading to it in the snow from the parking lot. Pratl walks over to the vehicle and engages in a conversation with defendant, who is sitting in the driver's seat.

¶ 14    Defendant tells Pratl that she is coming from seeing a movie, "Star Born," in Mokena and that she is waiting for her aunt. Pratl asks defendant to step out of the automobile, and she refuses. Pratl responds, "Yes, Meaghan, you're going to have to step out of the car for me, ok," but she again refuses.

¶ 15    Zumerling walks over to the vehicle, and Pratl tells him that defendant is refusing to exit her automobile. Zumerling asks defendant to step out of the vehicle. She says she is "fine." Zumerling tells her that he would like her to step out of the vehicle and come with him so that they are not standing in the middle of the snowy field. Defendant asks to call her aunt. Zumerling tells defendant that she must step out of the automobile.

¶ 16    Defendant again asks to call her aunt. Zumerling again tells her she must exit the vehicle because she is in the middle of a field and she just ran over some bushes. Defendant refuses, and Zumerling tells her, "You have to step out, ok?" Defendant insists on calling her aunt. Zumerling tells her that, even if her aunt comes, "You have to get out of the vehicle."

¶ 17    Pratl asks defendant for her insurance. When she has trouble locating it among her papers, Pratl points out a State Farm card. She hands him all her papers. Pratl tells her, "Meaghan, you've

got to step out of the car, you're in the middle of a field." When she does not do so, Pratl says, "Come with me please," "I'm going to need you to step out," and "I need you to step out of the car." Defendant asks if the officers can come inside her vehicle, and the officers say no.

¶ 18    Pratl tells defendant that he smells alcohol on her breath and sees an open bottle of vodka on the front seat. He tells defendant, "I'm going to need you to step out of the car and come talk to me." He informs her that the failure to exit the vehicle will result in an obstruction charge. He repeats, "I'm going to ask you again please step out of the car" so that they can talk in the parking lot. Defendant asks why they cannot talk in the field. Pratl again tells her that he wants her to come to the parking lot. Zumerling tells defendant that they are now investigating her for a DUI based on her glassy, bloodshot eyes, her slurred speech, and the open bottle of vodka next to her.

¶ 19    Pratl tells defendant, "Please come with me, ok." Defendant informs them that her dad died. Pratl says, "Meaghan, I need you to step out of the car, ok?" Defendant asks if she can wait. Pratl says no and tells her to "step out of the car please." She does not do so.

¶ 20    Pratl tells defendant, "I've asked you about a dozen times, if you don't step out of the car I'm going to arrest you for obstruction." Defendant responds "ok" but remains in the vehicle.

¶ 21    Pratl tells her that they are investigating whether she committed a DUI, and he repeats that, if she does not exit the vehicle, he will arrest her for obstruction and take her to jail. He then tells her two more times to step out of the vehicle, at which point defendant asks if she can take a shot of vodka. Pratl responds, "You're asking me for a shot of alcohol during an investigation for DUI? Ok, step out of the car." When she fails to do so, Pratl states, "We've asked you numerous times to step out and you haven't so now you'll be placed in handcuffs."

¶ 22    Defendant exits the vehicle, and the officers handcuff her and repeatedly tell her to stand up and quit resisting as they lead her to the squad car.

¶ 23    Defendant's entire encounter with the officers, while she was in the automobile, lasted about 15 minutes.

¶ 24    Zumerling's dashboard camera video was also admitted into evidence and played for the jury and is contained in the record on appeal. It depicts the same conversations between defendant and the officers. Photographs of defendant's automobile sitting in the snowy field, with tire tracks leading to it from the parking lot, also were admitted into evidence.

¶ 25    Following all the evidence, the State rested, and defendant's motion for a directed verdict was denied. Defendant did not testify, and the defense rested. The jury convicted defendant of DUI and of obstructing a peace officer. The court subsequently denied defendant's posttrial motion and sentenced her. Defendant appeals.

¶ 26    First, defendant argues that the State failed to prove her guilty of obstruction of a peace officer beyond a reasonable doubt. Section 31-1(a) of the Criminal Code of 2012 provides that a person commits obstruction of a peace officer when she knowingly "obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2018). The legislative focus of section 31-1(a) is to prevent conduct impeding or hindering the officer in the performance of his authorized duties, whether by a physical act interfering with the officer or by conduct falling between mere argument and a physical act that also impedes or hinders the officer in the performance of his authorized duties. *People v. Baskerville*, 2012 IL 111056, ¶¶ 22-23. The relevant inquiry is whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found defendant guilty of obstruction of a peace officer beyond a reasonable doubt. *People v. McLaurin*, 2020 IL 124563, ¶ 22.

¶ 27    Defendant here was convicted of the obstruction charge for failing to timely exit her vehicle after multiple commands to do so by Pratl and Zumerling. Defendant argues that the State failed to prove her guilty of obstruction because her encounter with the officers was not of a type requiring her to speak with them or to leave the vehicle at their request.

¶ 28    Police-citizen encounters are divided into three tiers: (1) arrests, which must be supported by probable cause; (2) *Terry* stops, which are brief investigative detentions that must be supported by a reasonable, articulable suspicion of criminal activity (see *Terry v. Ohio*, 392 U.S. 1 (1968)); and (3) consensual encounters that involve no coercion or detention and thus do not implicate fourth amendment interests. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). In a consensual encounter with a police officer, an individual may decline to speak with the officer and go on her way. See *People v. Jones*, 2024 IL App (1st) 221555, ¶ 80.

¶ 29    Defendant contends that, when the officers first approached her vehicle, they were not seeking to conduct a *Terry* stop or to arrest her and, as such, that the initial encounter was a consensual one pursuant to which she could decline their requests to exit the vehicle and go on her way.

¶ 30    Alternatively, defendant contends that the officers were engaging in community caretaking when they approached her and, therefore, that she could decline their requests to exit the vehicle. The community caretaking doctrine is analytically distinct from consensual encounters and is invoked when validating a search or seizure under the fourth amendment. See *Luedemann*, 222 Ill. 2d at 545-46. To qualify as community caretaking, the officer must be performing some function other than the investigation of a crime, such as helping children find their parents, mediating noise disputes, responding to calls about sick neighbors, or helping inebriates to get home. *People v. Woods*, 2019 IL App (5th) 180336, ¶ 28. A person questioned by police pursuant to their

community caretaking function is free to decline to answer the officers' questions. *People v. Dale*, 301 Ill. App. 3d 593, 601 (1998).

¶ 31    Even if we accepted defendant's argument that her initial encounter with the officers was a consensual one or involved community caretaking, it transformed into a *Terry* stop for DUI when she presented with glassy, bloodshot eyes, slurred her speech, smelled of alcohol, and exhibited an open vodka bottle on the front passenger seat. See, *e.g.*, *People v. Pellegrino*, 2024 IL App (2d) 230343, ¶ 23. Police officers who observe indicia of DUI during a *Terry* stop are authorized to detain an individual for investigation, including questioning and field sobriety tests, to determine whether she was driving under the influence. *People v. Carraher*, 199 Ill. App. 3d 965, 971-72 (1990). The driver's repeated failure to comply with the officers' demands to exit the vehicle in furtherance of the DUI investigation constitutes obstruction. See *People v. Synnott*, 349 Ill. App. 3d 223, 227-29 (2004); *People v. Kotlinski*, 2011 IL App (2d) 101251, ¶ 47.

¶ 32    In the present case, the evidence at trial, including the officers' testimony as well as their dashboard camera videos, shows that the officers repeatedly ordered defendant out of the vehicle, so that they could administer field sobriety tests in the parking lot and further investigate whether she was under the influence. Defendant ignored the officers' commands and repeatedly refused to exit her vehicle. Viewing this evidence in the light most favorable to the State, any rational trier of fact could find that defendant's repeated failure to comply with the officers' orders to exit the vehicle in furtherance of the DUI investigation constituted obstruction under section 31-1(a). See *Kotlinski*, 2011 IL App (2d) 101251, ¶ 47.

¶ 33    Defendant argues that the evidence does not show that the officers *ordered* her to exit the vehicle. According to defendant, the officers requested that she step out of the vehicle, and she was well within her right to reject the request. The argument is meritless. Pratl and Zumerling did

not merely ask defendant to step out of the automobile. Rather, the dashboard camera videos show that the officers repeatedly told defendant in no uncertain terms that that she was required to exit the automobile and go with them to the parking lot. The officers explained that they were conducting a DUI investigation and that, if she failed to exit the vehicle, they would arrest her for obstruction. Viewing the dashboard camera videos in the light most favorable to the State, any rational trier of fact could find that the officers were ordering defendant to exit the vehicle in furtherance of a DUI investigation and that defendant's repeated failure to comply with the orders to exit her vehicle constituted obstruction. See *Synnott*, 349 Ill. App. 3d at 229 (affirming defendant's conviction for obstructing a peace officer by repeatedly disobeying the order to exit the vehicle during a DUI investigation, where the officer did not merely ask defendant to step out of the automobile but said he "needed" defendant to step out and that he would be arrested if he did not comply).

¶ 34 Defendant also argues that her obstruction conviction should be reversed because section 31-1(a) does not proscribe mere argument with a policeman about the validity of an arrest. See *People v. Hilgenberg*, 223 Ill. App. 3d 286, 289 (1991). Here, though, viewing the evidence in the light most favorable to the State, any rational trier of fact could find that defendant was not merely arguing with the officers but repeatedly refusing their lawful orders to exit the vehicle in furtherance of the DUI investigation. As such, defendant was guilty of obstructing a peace officer. See *id.*

¶ 35 Defendant further argues that her obstruction conviction should be reversed because her act of refusing to exit her vehicle was not a material impediment to the officers' DUI investigation, *i.e.*, that it was an insubstantial act not rising to the level of obstruction. This same argument was rejected in *Synnott*, 349 Ill. App. 3d at 228, where we held that the driver's repeated refusal to

comply with the officers' orders to exit the vehicle during a DUI investigation constituted a significant impediment to the officer's performance of his duties and was not insubstantial.

¶ 36    Next, defendant argues that she was denied a fair trial when Pratl testified that if a person is "requested [to step] out of the vehicle *** they have to come out of the vehicle." Defendant contends that Pratl's testimony constituted an inaccurate statement of the law and misled the jury into believing that it could convict her of obstruction for refusing a mere request to exit the vehicle, when in fact it could only lawfully convict her if she refused an *order* to exit the vehicle. Defendant further contends that the error was compounded during the State's closing argument, when it similarly argued that she could be convicted of obstruction for refusing the officers' mere requests to exit the vehicle. Defendant forfeited review by failing to raise the issue in her posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Even if the issue had not been forfeited, we would find no reversible error where Pratl's testimony and the dashboard camera videos provide overwhelming evidence that the officers repeatedly ordered defendant out of the vehicle in furtherance of the DUI investigation and that defendant obstructed them by refusing to exit for about 15 minutes. Therefore, any error in Pratl's testimony or the State's closing argument was harmless. See *People v. Lerma*, 2016 IL 118496, ¶ 33 (error is harmless where the evidence overwhelmingly supports defendant's conviction).

¶ 37    Next, defendant argues that the complaint charging her with obstruction was fatally defective. A complaint charging obstruction of a peace officer must set forth allegations regarding the authorized act the officer was performing and the acts knowingly committed by defendant that constituted obstruction. *Hilgenberg*, 223 Ill. App. 3d at 289. The complaint here charged that defendant

-10-

"knowingly obstructed the performance of [Officers Pratl and Zumerling] of an authorized act within their official capacity, knowing [Officer] Pratl and [Officer] Zumerling to be peace officers engaged in the execution of their official duties, in that the defendant *** refused to exit her vehicle for further investigation of a traffic offense."

¶ 38    The complaint set forth the officers' authorized act, investigation of a traffic offense, as well as the obstructive act, defendant's failure to exit the vehicle. The complaint was sufficient to apprise defendant of the charge against her and was not fatally defective.

¶ 39    Defendant next contends that, during closing argument, the State improperly remarked that she was guilty of obstruction for acts not charged in the complaint, specifically, for refusing a breath test or for going limp or for needing to be carried to the squad car. Defendant cites no portion of the record where the State made those remarks. Accordingly, the issue is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Forfeiture aside, review of the record shows that the prosecutor argued that the obstructive act was defendant's repeated refusal to exit the vehicle, which is exactly what she was charged with in the complaint. Therefore, we find no reversible error.

¶ 40    Next, defendant argues that the court improperly instructed the jury on the obstruction charge when it gave Illinois Pattern Jury Instructions, Criminal, No. 22.14 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 22.14), as follows:

"To sustain the charge of obstructing a peace officer, the State must prove the following propositions:

First Proposition: That Christopher Pratl was a peace officer; and

Second Proposition: That the defendant knew Christoper Pratl was a peace officer; and

Third Proposition: That the defendant knowingly obstructed the performance by Christopher Pratl of an authorized act within his official capacity.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 41 Defendant forfeited review by failing to object at trial to the giving of IPI Criminal 4th No. 22.14. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 25. Even if there were no forfeiture, we would find no reversible error.

¶ 42 The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009). When an IPI criminal instruction applies, it shall be used unless the court determines that it does not accurately state the law. Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). Generally, the giving of jury instructions is reviewed for an abuse of discretion. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). However, when the issue is whether the instruction accurately conveys the applicable law, our review is *de novo*. *Id.*

¶ 43 Defendant here argues that IPI Criminal 4th No. 22.14 does not accurately state the law because it fails to inform the jury that the obstructive act must materially impede the officer in the performance of his authorized duties. See *People v. Gotschall*, 2022 IL App (4th) 210256, ¶¶ 26-27 (holding that there is a materiality requirement for any type of obstructive conduct). A similar argument was considered in *People v. Osman*, 2024 IL App (2d) 230149-U, which we cite for its persuasive authority pursuant to Illinois Supreme Court Rule 23(b), (e)(1) (eff. Feb. 1, 2023). In

*Osman*, the defendant argued that the court erred by giving IPI Criminal 4th No. 22.14 without any modifications specifying the material conduct committed by defendant that obstructed the officer. *Osman*, 2024 IL App (2d) 230149-U, ¶ 26. The appellate court rejected defendant's argument, finding that IPI Criminal 4th No. 22.14 accurately conveys the applicable law and that, where the evidence and arguments at trial detail defendant's obstructive conduct, making the jury aware of what conduct was alleged to support the obstruction charge, no modifications to IPI Criminal 4th No. 22.14 are necessary. *Id.* ¶ 28. In the present case, the evidence and arguments at trial made the jury aware that it was being asked to decide if defendant's repeated refusal to exit the vehicle during the DUI investigation obstructed the officers in their performance of their authorized duties. As such, no modifications to IPI Criminal 4th No. 22.14 were necessary. The unmodified version of IPI Criminal 4th No. 22.14 accurately conveyed the applicable law, and the court committed no error in giving it to the jury.

¶ 44    Next, defendant argues that the State failed to prove her guilty of DUI under section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2)(West 2018)), which states in relevant part: "(a) A person shall not drive or be in actual physical control of any vehicle within this State while: *** (2) under the influence of alcohol[.]"

¶ 45    The State can prove the elements of a DUI by circumstantial evidence alone. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20. Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts that reasonably and usually follow according to common experience. *People v. White*, 2016 IL App (2d) 140479, ¶ 37.

¶ 46    To prove defendant was under the influence of alcohol, the State must show that, as a result of consuming any amount of alcohol, her faculties were so impaired that it diminished her ability to act or think with ordinary care. *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007). With respect

to the actual physical control element, defendant need not drive to be in actual physical control of a vehicle, nor is her intent to put the vehicle in motion relevant to the determination. *Morris*, 2014 IL App (1st) 130512, ¶ 17. The issue of actual physical control is determined case-by-case, with consideration given to whether defendant (1) possessed the ignition key, (2) had the physical capability of starting the engine and moving the vehicle, (3) was sitting in the driver's seat, and (4) was alone with the doors locked. *Id.*; *People v. Davis*, 205 Ill. App. 3d 431, 435 (1990). These factors are a guideline for determining whether defendant had actual physical control of the vehicle, but they are not exhaustive. *Morris*, 2014 IL App (1st) 130512, ¶ 17. Nor is the absence of one individual factor controlling. *Id.*

¶ 47    Defendant argues for reversal of her DUI conviction because she was not driving or in actual physical control of the vehicle when the officers approached her, as the vehicle was stuck in the snow and immobilized and incapable of being driven or moved. The State counters that defendant was in actual physical control of the vehicle because she was found in the front seat with the engine running and that the vehicle was only temporarily stuck in the snow and would be capable of movement once it was dug out.

¶ 48    Thus, the State's argument is that a driver found inside a vehicle remains in actual physical control of it even if it is temporarily inoperable, as long as she has the capability of moving the vehicle once it is made operable again. The State's argument is supported by *Davis*, 205 Ill. App. 3d at 432-33, which considered whether a defendant who was discovered asleep in a zippered sleeping bag in the back seat of his automobile was in actual physical control of the vehicle for purposes of the DUI statute. In answering that question in the affirmative, we cited several out-state cases, including *State v. Thurmer*, 348 N.W.2d 776 (Minn. Ct. App. 1984), which held that a finding of actual physical control is not defeated by showing that defendant was off the road in a

snow-filled ditch. We also cited *Garcia v. Schwendiman*, 645 P.2d 651 (Utah 1982), which held that a defendant was in actual physical control even though his automobile was temporarily blocked by a fence on one side and another vehicle on the other. *Thurmer* and *Schwendiman*, which we cited with approval in *Davis*, indicate that the temporary inoperability of a vehicle does not defeat a finding of actual physical control. See *People v. Heimann*, 142 Ill. App. 3d 197, 198-99 (1986) (defendant was in actual physical control of the vehicle even though it would not start and he had to push it down a road); *People v. Cummings*, 176 Ill. App. 3d 293, 294-97 (1988) (defendant was in actual physical control of the vehicle even though it was in a ditch and not drivable due to a broken tie rod).

¶ 49 Such a holding is echoed in other cases from states that have DUI statutes similar to ours. In *Hughes v. State*, 943 So. 2d 176 (Fla. Dist. Ct. App. 2006), the Florida Third District Court of Appeal considered such cases and found they consistently held that actual physical control only requires that the temporarily inoperable vehicle be reasonably capable of being rendered operable without substantial mechanical repairs. *Id.* at 194-95 (citing cases showing that actual physical control has been proven despite the automobile being out of gas, stuck in a snow-filled ditch, or having a dead battery or flat tire).

¶ 50 The rationale for applying the "reasonably capable of being rendered operable" standard is "due to the recognition that the law in this area is preventive in nature. Its purpose is to deter intoxicated individuals from getting into their vehicles, except as passengers, and enables law enforcement to apprehend an intoxicated driver before he strikes." *Id.* at 196; see *Davis*, 205 Ill. App. 3d at 437 (recognizing that the purpose of the Illinois DUI statute is to keep intoxicated drivers out of their vehicles).

¶ 51    In line with the preventive purpose of our DUI statute and in accordance with the great weight of authority, we similarly apply the "reasonably capable of being rendered operable" standard in determining whether the jury here correctly found that defendant was in actual physical control of her vehicle while under the influence of alcohol. Viewing all the evidence in the light most favorable to the State, any rational trier of fact could find from defendant's interaction with the officers that she was under the influence of alcohol while sitting in the driver's seat of a running vehicle that was only temporarily stuck in the snow. As substantial mechanical repairs were not necessary to render the vehicle mobile again, it was reasonably capable of being rendered operable, such that defendant was in actual physical control thereof and guilty of DUI.

¶ 52    Defendant cites a recent case out of Kansas, *Jarmer v. Kansas Department of Revenue*, 546 P.3d 743 (Kan. 2024), as persuasive authority in support of her argument that she was not in actual physical control of the vehicle at the time it was stuck in the snow. In *Jarmer*, Jarmer's husband drove their vehicle into a muddy ditch. *Id.* at 745. Law enforcement arrived to find the couple trying to maneuver the vehicle out of the ditch. *Id.* While Jarmer's husband was pushing the vehicle from the rear, Jarmer was in the driver's seat, with her hands on the steering wheel as she pressed the gas pedal. *Id.* The vehicle did not move, though, as it remained stuck in the mud. *Id.* Jarmer submitted to a blood alcohol test, which she failed, and her driver's license subsequently was suspended pursuant to the relevant Kansas statute (Kan. Stat. Ann. § 8-1002(a)(2) (West 2020)) providing for license suspension where there were reasonable grounds to believe that the person was "operating" a vehicle while under the influence of alcohol. *Jarmer*, 546 P.3d at 745. Jarmer appealed the suspension of her driver's license to the Kansas Supreme Court. *Id.* at 746.

¶ 53    The Kansas Supreme Court noted prior Kansas precedent holding that "operate" means "to drive" and that driving requires movement of the vehicle. (Internal quotation marks omitted.) *Id.*

at 747. Since Jarmer was unable to move the vehicle due to its being stuck in the mud, she was not "operating" it while under the influence of alcohol. *Id.* at 749. Therefore, the Kansas Supreme Court reversed the suspension. *Id.*

¶ 54    *Jarmer* is inapposite, as it involved a construction of whether the driver there was "operating" a vehicle for purposes of the Kansas license suspension statute, whereas the issue here involves whether defendant was in "actual physical control" of her vehicle for purposes of the Illinois DUI statute. As we have discussed, the relevant in-state and out-of-state precedent compels the conclusion that defendant was in actual physical control of her vehicle despite its temporary immobility.

¶ 55    There is an additional reason in the instant case for affirming the jury's verdict convicting defendant of DUI. The circumstantial evidence admitted at trial would permit an inference that defendant's vehicle was temporarily inoperable *because* she had driven it into the snowy field while intoxicated. Specifically, Pratl testified to receiving a dispatch at 6:09 p.m. on January 12, 2019, regarding a noninjury accident. He arrived at the scene about two minutes later and observed three bushes on the edge of a parking lot, next to a field, which appeared as if they had been run over. About 30 feet away, he observed a minivan in the field, with the front wheels spinning and the engine running. Pratl approached the vehicle and engaged in a conversation with defendant, who was sitting alone in the front seat next to an open bottle of vodka. Zumerling arrived shortly thereafter. Defendant admitted to driving the vehicle from a movie theater in Mokena. Pratl smelled alcohol on defendant's breath and observed that her eyes were glassy and bloodshot. Zumerling also smelled the alcohol on defendant's breath, observed her glassy and bloodshot eyes, and further noted that her speech was slurred and she appeared slow and lethargic. Defendant had difficulty handing over her proof of insurance, expressed confusion as to why they were

-17-

questioning her, and repeatedly refused the officers' commands to exit the vehicle. She finally got out after about 15 minutes when the officers threatened to arrest her for obstruction. After exiting the vehicle, defendant made herself go limp. Both officers testified to their opinions that defendant was under the influence of alcohol. The dashboard camera videos corroborated the officers' account of their interactions with defendant.

¶ 56    Viewing all this evidence in the light most favorable to the State, any rational trier of fact could infer that defendant was intoxicated when she drove her vehicle over several bushes and into a snowy field, where she was discovered a couple of minutes after the officers were dispatched, sitting next to an open vodka bottle in the front seat while smelling of alcohol and exhibiting bloodshot and glassy eyes, slurred speech, and a confused demeanor. Although the vehicle was rendered temporarily inoperable when it became stuck in the snow, the jury could find that defendant had been driving the vehicle prior thereto while in an intoxicated state and that it was her act of driving the vehicle into the snowy field that rendered it inoperable. Therefore, we affirm defendant's DUI conviction.

¶ 57    Next, defendant argues that the State made an improper comment during its rebuttal closing argument. Defendant forfeited review by failing to raise the issue in her posttrial motion. *Enoch*, 122 Ill. 2d at 186. Even if the issue had not been forfeited, we would find no reversible error.

¶ 58    Prosecutors are afforded wide latitude during closing arguments, and any improper remarks will not merit reversal unless they cause substantial prejudice to defendant. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007); *People v. Moody*, 2016 IL App (1st) 130071, ¶ 60. During closing arguments, the prosecutor may comment on the evidence presented or any reasonable inferences drawn from the evidence and respond to remarks by defense counsel that clearly invite response. *Moody*, 2016 IL App (1st) 130071, ¶ 60. There is currently a split in the appellate court regarding

whether allegations of prosecutorial misconduct during closing arguments should be reviewed *de novo* or for an abuse of discretion. See *People v. Cornejo*, 2020 IL App (1st) 180199, ¶ 125. We need not resolve the dispute because, under either standard, we would affirm.

¶ 59    During her closing argument, defendant stated that there was no evidence as to how long her vehicle had been stuck in the snowy field prior to her arrest and that it might have been there for two or three hours before she started drinking, meaning she did not drive the vehicle while intoxicated. In rebuttal, the prosecutor stated: "[T]he officer was dispatched to that area at 6:09 because he received a call that a vehicle had just—not two hours ago—had just driven through bushes and was now in a field."

¶ 60    On appeal, defendant contends the State's rebuttal comment was error because there was no evidence that she had driven the vehicle into the field shortly before the officers were dispatched to her. Defendant further contends that the State's improper rebuttal argument was prejudicial because it "destroyed" her argument that she had been sitting in the field for at least a couple of hours before she started drinking.

¶ 61    Defendant's contention of error is without merit because the State's rebuttal argument was a reasonable inference from the evidence. Pratl testified to receiving a dispatch at 6:09 p.m. on January 12, 2019, to go to 16040 Boardwalk Lane for a noninjury accident. He arrived about two minutes later, where he saw that it was snowing and that there were tire tracks in the snow leading to defendant's vehicle, which was sitting in a field. The officer's testimony was supported by the dashboard camera video as well as by photographs admitted into evidence, which show the vehicle sitting in the snowy field with fresh tire tracks leading to it. The reasonable inference is that defendant had driven into the field shortly before the officers' arrival (and not two to three hours

before as argued by defendant), because the tire tracks were still fresh and not yet covered up by the blowing snow. Accordingly, the State's rebuttal argument did not constitute reversible error.

¶ 62    Next, defendant argues that her counsel provided ineffective assistance. To prevail on a claim of ineffective assistance, defendant must show that her counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 63    Defendant's claim of ineffective assistance is premised on counsel's opening statement, in which he informed the jury that defendant was an alcoholic who was a member of Alcoholics Anonymous (AA) and was grieving the anniversary of her father's death when the officers were dispatched to her on January 12, 2019. Defendant argues that counsel's opening statement was almost "tantamount to a confession of guilt (of DUI) by the defense."

¶ 64    To the contrary, counsel informed the jury during the opening statement that, despite her alcoholism, defendant did *not* commit DUI on January 12, 2019. Specifically, counsel stated that, to keep from drinking on the anniversary of her father's death, defendant drove to her AA sponsor but she was not home. Defendant then decided to see a movie. First, though, defendant stopped at a liquor store and bought a bottle of vodka. Counsel explained that defendant did not buy the vodka to drink during the movie; rather, the bottle was "sort of her crutch." She put the bottle in the vehicle and then saw the movie at 1 p.m., during which time she was "all alone, not drinking, but safe." After the movie ended, defendant drove back to the sponsor's residence and arrived there at 3 p.m., but she still was not home. Counsel stated that defendant still "hasn't opened the bottle. It's in the back of the vehicle."

¶ 65    Counsel stated that it was snowing pretty heavily, and so defendant decided to go home. Due to the heavy storm and the poor driving conditions, defendant "winds up in a field." She called for a tow truck and was told it will be there in about 45 minutes. Counsel informed the jury that, during the 45-minute wait, defendant "doesn't have anything to drink. While she was driving, she wasn't drinking."

¶ 66    The tow truck had not arrived by 5:30 p.m. Defendant called her aunt and remained in the vehicle. Counsel informed the jury that, at that point, the vehicle was stuck in the snow and "incapable of moving." Counsel further told the jury that "there is going to be not one iota of proof that [defendant] was under the influence of alcohol at the time of driving."

¶ 67    Thus, contrary to defendant's argument on appeal, her counsel did not concede during his opening statement that she was guilty of DUI but instead stated that the evidence would show that she was *not* intoxicated while driving the vehicle. Accordingly, defendant's claim of ineffective assistance fails.

¶ 68    Defendant's ineffective assistance claim also fails because she was not prejudiced by her counsel's opening statement that she was an alcoholic grieving the anniversary of her father's death on the date of the incident. Given the testimony of Pratl and Zumerling and the dashboard camera videos, there is no reasonable probability that defendant would have been acquitted of DUI even if the opening statement had not been made.

¶ 69    Defendant also claims her trial counsel provided ineffective assistance by failing to argue for an acquittal of the obstruction charge on the basis that her refusal to exit the vehicle did not materially impede the officers' DUI investigation. Defendant's claim is meritless. Counsel argued for an acquittal of the obstruction charge on the basis that the officers failed to initially tell her that they suspected her of DUI and wanted her to take field sobriety tests and, thus, they lulled her into

thinking that the encounter was a consensual one in which she could refuse to exit the vehicle. Once the officers clearly informed defendant that her failure to exit the vehicle would result in her arrest for obstruction for impeding a DUI investigation, she complied. Counsel argued that all this evidence showed that defendant did not engage in any obstructive acts. Counsel's decision as to how to argue the case was a matter of trial strategy that was objectively reasonable and did not constitute ineffective assistance. See *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 36.

¶ 70 Next, defendant argues that the trial court erred by refusing her request to continue the hearing on her posttrial motion. The decision to deny a continuance will not be reversed absent an abuse of discretion and a showing that defendant suffered prejudice as a result. *People v. Flores*, 269 Ill. App. 3d 196, 201 (1995).

¶ 71 We find no abuse of discretion here. The record reflects that the trial court set May 10, 2023, as the date to hear arguments on posttrial motions. On that date, trial counsel appeared and informed the court that he had filed a posttrial motion, which he was ready to argue. However, trial counsel further informed the court that defendant had since hired new appellate counsel, who wanted to review the trial transcript to determine whether there were additional issues that should be raised in an amended posttrial motion to preserve them for review. Trial counsel sought a continuance so that the appellate counsel could review the transcript and file any amended posttrial motion. The court responded, "We're going to proceed with your motion today. If he wants to file any motion in the future, he can do so. But we're going to proceed with your motion. I'll let you argue it right now."

¶ 72 Trial counsel repeated the request for a continuance so that appellate counsel could review the transcript in anticipation of filing an amended posttrial motion. The court responded, "That could have been filed before today. I gave you until today's date for any [posttrial] motions and

for sentencing. So I'm going to move forward on your motion today. You can argue it and I'll rule on it and then we'll proceed to sentencing."

¶ 73    On this record, we find no abuse of discretion in the trial court's decision to deny the motion for a continuance for appellate counsel to review the transcript and file an amended posttrial motion. As noted by the court, no reason was given for why the amended posttrial motion was not filed earlier and why the motion for a continuance was not made until the date of the hearing. The court was well within its discretion to deny the continuance motion and proceed to hear arguments on the posttrial motion that already had been filed.

¶ 74    Further, defendant was not prejudiced by the denial of her motion for a continuance to file an amended posttrial motion. Defendant contends she was prejudiced because the amended posttrial motion would have preserved appellate review of several issues that have been forfeited. Despite any forfeiture, though, we have addressed all the issues on their merits. As the trial court's denial of the continuance motion did not preclude appellate review of any of her issues on appeal, she has shown no prejudice necessitating reversal.

¶ 75    For all the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 76    Affirmed.

---

### *People v. McAndrew*, 2024 IL App (1st) 230881

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-MC-5000186; the Hon. Joel D. Buikema, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Donald J. Ramsell, of Ramsell & Kunowski, L.L.C., of Wheaton, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha Marie Kelly, and Heather Fahrenkrog, Assistant State's Attorneys, of counsel), for the People. |

---