2026 IL App (1st) 230495-U

No. 1-23-0495

Order filed March 6, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos.   30418376 |
| | ) |         30418378 |
| JONATHAN CORTEZ, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas A. Morrissey, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justice Hyman concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1     *Held*:   We affirm defendant's conviction for driving under the influence of alcohol where the video and testimonial evidence were sufficient to prove he was under the influence.

¶ 2     Following a bench trial, defendant Jonathan Cortez was convicted of driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) and improper lane usage (625 ILCS 5/11-709 (West 2016)) and sentenced to 18 months' conditional discharge and 12 months' supervision,

respectively. Defendant appeals, challenging the sufficiency of the evidence as to his DUI conviction. He claims that the video evidence does not corroborate the witness testimony and that his demeanor could be attributed to tiredness instead of alcohol. We affirm.

¶ 3    Defendant was charged with DUI, operating an uninsured vehicle, improper lane usage, and failure to wear a seatbelt. The State nol-prossed the uninsured vehicle charge and proceeded to trial on the remaining counts.

¶ 4    Illinois State Police trooper Michael Leathers testified that he was driving on I-90 at approximately 10:18 p.m. on December 10, 2017. He watched a red Hyundai "cross*** over lane use markings," activated his emergency lights, and initiated a traffic stop. Upon approaching the stopped vehicle, Leathers saw defendant in the driver's seat. Leathers noticed a "strong odor" of alcohol on defendant's breath and observed that his eyes were bloodshot and glassy. Leathers asked for defendant's driver's license and insurance, where defendant was coming from, and if defendant had consumed any alcohol. (The State did not query Leathers regarding how defendant responded to the question about alcohol consumption.)

¶ 5    Leathers asked defendant to exit the Hyundai to perform a horizontal gaze nystagmus (HGN) test, which tests for evidence of alcohol consumption by involuntary eye "fluttering." Leathers, who had been trained in administering such standardized field sobriety tests (SFSTs), explained the procedure. First, the subject stands with their feet together and arms at their sides, facing the administrating officer. The officer holds their finger or a stylus 12 to 15 inches in front of the individual's face, moving it back and forth at a rate standardized by the National Highway Traffic Safety Administration. There are six clues of alcohol consumption, and the presence of four indicates consumption.

¶ 6     Defendant exited the vehicle, and Leathers asked whether defendant had eye injuries. Defendant responded that he did not. Leathers explained the HGN test to defendant and began the test. Defendant then stated that he did not speak English and required a translator. Leathers placed defendant in the back of the squad car and radioed the Chicago Police Department for a Spanish-language translator. Defendant continued to smell of alcohol.

¶ 7     When a translator arrived, Leathers explained the HGN test to defendant and administered it again. Defendant exhibited all six indicators of alcohol consumption: "lack of smooth pursuit," "distinct and sustained nystagmus at maximum deviation," and "onset of nystagmus prior to 45 degrees" in each eye.

¶ 8     Leathers then attempted to perform another SFST, the walk and turn test. Defendant refused further testing, so Leathers arrested him. Leathers took defendant to a police station, where defendant was read the warnings to motorists, although Leathers could not recall if the warnings had been translated. Defendant refused a breathalyzer test.

¶ 9     Leathers testified that he had observed individuals under the influence of alcohol hundreds of times in his professional life and thousands of times in his personal life. Based on Leathers' training, experience, and observations of defendant's poor driving and lane usage, along with defendant's bloodshot glassy eyes, the odor of alcohol, and the HGN test results, Leathers opined that defendant was under the influence when Leathers pulled him over.

¶ 10    The State published dash cam footage from Leathers' squad car, which is included in the record on appeal and has been reviewed by this court. The dash cam faces forward and is positioned slightly above the dashboard, just inside the windshield.

¶ 11    In the footage, Leathers follows a red Hyundai. The red Hyundai partially veers into the lane to the left before returning to its lane, where it swerves within the markers. Leathers pulls over the Hyundai to a median between the rightmost lane and an exit lane.

¶ 12    Leathers exits his squad car and converses with defendant in the Hyundai, although the conversation is largely inaudible. Leathers returns to his vehicle, reverses, and activates a light that illuminates the road near the front of his squad car. Leathers returns to the Hyundai's front passenger window and asks defendant to step outside for testing, commenting that defendant smells "like alcohol."

¶ 13    The driver's door opens, and defendant, while in a seated position, leans out of the vehicle. He rises to his feet and walks to the back of the vehicle, appearing to place more weight on his left leg than his right. Leathers tells defendant to stand by the circle of light. Defendant walks towards and around the light before Leathers redirects him to a location where defendant faces the dash cam. Leathers stands directly in front of defendant, almost entirely blocking the dash cam's view of him. Leathers raises his right arm and can be heard administering the HGN test. The dash cam does not depict defendant's performance, but Leathers tells defendant multiple times to keep his head straight and only move his eyes. Defendant says, "Oh. Sorry, I don't understand you." Leathers walks defendant, who smiles, toward the squad car and out of frame.

¶ 14    The State advanced the dash cam footage by approximately 10 minutes. At this point in the footage, a Chicago Police Department vehicle arrives, and two officers exit. Leathers asks one to translate. A person situated out of frame says, "he's sleeping." A knocking sound is audible, and a voice tells defendant to wake up.

¶ 15    Leathers leads defendant back into view, positions him near the circle of light, and stands in front of him, blocking the dash cam's view of defendant. The officer translating stands nearby. As the officer translates, Leathers resumes the HGN test. He repeatedly tells defendant to keep his head straight.

¶ 16    Leathers begins to administer the walk and turn test, stepping to the side so that defendant is visible. Leathers directs defendant to stand on a line with his back to the dash cam and explains the test. Defendant shivers, and Leathers reminds him to keep his hands out of his pockets. The translator states that defendant said, in Spanish, that he wants to go to jail because he is cold. Leathers confirms defendant is refusing further testing and arrests him.

¶ 17    On cross-examination, Leathers acknowledged that a driver's distraction or exhaustion, or a mechanical issue, could cause a vehicle to veer into another lane. He also conceded that defendant appeared "orderly," although "cocky," and did not have trouble walking although his speech was slurred. Leathers had noted in a report that defendant was swaying and described him as "sleepy." Leathers confirmed that defendant had fallen asleep in the squad car while waiting for the translator. When performing the HGN test, after the translator's arrival, Leathers did not ask defendant whether he had any medical conditions. Leathers acknowledged that he could not testify regarding the content of the translating officer's Spanish-language conversation with defendant.

¶ 18    The State rested, and defendant moved for a directed verdict, which the trial court granted as to the seatbelt charge but denied as to DUI and improper lane usage. Defendant rested. In closing, defense counsel argued, in relevant part, that Leathers could not verify that the translating officer accurately conveyed the HGN test instructions.

¶ 19    The trial court found defendant guilty of both driving under the influence and improper lane usage. The court stated that the totality of the circumstances showed "impairment" beyond a reasonable doubt. Defendant "weav[ed]" in traffic, had glassy eyes, swayed and stumbled when exiting the Hyundai, exhibited an "insulting attitude," and "most importantly," fell asleep during the short wait for the translator. The court found the odor of alcohol significant as an indicia for consumption. Addressing the HGN test, the court noted defense counsel had criticized "a translation problem" in his cross-examination of Leathers and in arguments, but the court commented that "it's a visual problem. It's a physical *** test where we wave a wand." The court concluded that "taking the translation issue out of it completely," the evidence still sufficed to prove DUI.

¶ 20    Defendant filed a motion and an amended motion to reconsider, which the trial court denied. Following a hearing, the court sentenced defendant to 18 months' conditional discharge for DUI and 12 months' supervision for improper lane usage.

¶ 21    On appeal, defendant contests the sufficiency of the evidence supporting his DUI conviction. He urges that the smell of alcohol did not prove he was under the influence, and that his bloodshot, glassy eyes could be attributed to allergies, irritation, tiredness, or the cold. Defendant additionally asserts his ability to walk and communicate, combined with an absence of vomiting or crying, shows that he was not under the influence.

¶ 22    In reviewing a challenge to the sufficiency of the evidence, this court determines whether, viewing the evidence in the light most favorable to the State, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Welch*, 2025 IL App (1st) 231116, ¶ 18 (quoting *People v. Smith*, 185 Ill. 2d 532, 541 (1999)). The testimony of

one credible witness is sufficient to convict. *People v. Daniels*, 2025 IL App (1st) 230823, ¶ 20. This court will not substitute its judgment for the trial court's as to witness credibility or the weight given to evidence. *People v. Wade*, 2025 IL App (1st) 231683, ¶ 23. We will disturb a conviction only where the evidence is "so unreasonable, improbable, or unsatisfactory" that reasonable doubt remains. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 23    Section 11-501(a)(2) of the Illinois Vehicle Code prohibits driving while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2016). To be convicted under this subsection, a defendant must (1) drive or be in "actual physical control" of a vehicle while (2) under the influence of alcohol. *Id.* Defendant solely argues that the evidence was insufficient to show he was under the influence of alcohol.

¶ 24    Whether a defendant was under the influence is a question of fact. *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. To demonstrate that a defendant was under the influence, the State must show that his "faculties were so impaired" by alcohol consumption that his "ability to act or think with ordinary care" was "diminished." *People v. McAndrew*, 2024 IL App (1st) 230881, ¶ 46. Circumstantial evidence, including an arresting officer's credible testimony, can establish being under the influence. *Id.* ¶ 45; *Groebe*, 2019 IL App (1st) 180503, ¶ 58. A trier of fact can weigh an officer's observations, "such as the defendant's conduct, speech, or appearance; the odor of alcohol on the defendant's breath; and testimony that the defendant failed a field sobriety test." *Groebe*, 2019 IL App (1st) 180503 ¶ 58.

¶ 25    Taking the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant drove under the influence of alcohol. As noted, a credible officer's testimony is sufficient for a DUI conviction. *Id.* The trial court found

Leathers credible, and we will not disturb that finding. See *Wade*, 2025 IL App (1st) 231683, ¶ 23. Dash cam footage corroborated Leathers' testimony that defendant veered out of and within his lane. Leathers observed defendant's eyes were bloodshot and glassy, his breath smelled "strong[ly]" of alcohol, his attitude was "cocky," and his speech was slurred. Defendant fell asleep while waiting for the translator and exhibited all six signs of alcohol consumption during the HGN test that was performed in a translator's presence. Any rational trier of fact considering this evidence could have found that defendant was under the influence of alcohol. See *Groebe*, 2019 IL App (1st) 180503, ¶ 59 (concluding a rational trier of fact could have found defendant under the influence based on poor driving, slurred speech, odor of alcohol, red and glassy eyes, and her responses to questioning). Therefore, the evidence was sufficient to support defendant's conviction.

¶ 26 Defendant attacks Leathers' reliability, arguing *inter alia* that the dash cam footage did not depict defendant stumbling, which would have corroborated Leathers' suspicion that defendant was driving under the influence. However, defendant does not claim the footage contradicts Leathers' testimony. Further, corroborating evidence is not required to establish guilt where, as here, the trial court finds a witness credible. *Id*. ¶ 58 (to show intoxication, "the State *** may rely solely on circumstantial evidence, such as the credible testimony of the arresting officer"); see also *People v. Herron*, 2012 IL App (1st) 090663, ¶ 23 (corroborating evidence is not necessary when eyewitness testimony is credible). That aside, defendant's poor driving, which is shown in the dash cam footage, corroborated Leathers' suspicion that defendant was driving impaired, and the footage shows defendant exiting the Hyundai with a marginally uneven gait.

¶ 27	Although defendant argues that cold and tiredness could explain his behavior, it is not incumbent on the trial court to seek "all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Neither is this court tasked with exploring every potential theory of innocence. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). Instead, we must determine whether, viewing the evidence in the light most favorable to the State, the evidence "could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 117-18. As explained, the State's evidence supported such a finding.

¶ 28	For these reasons, we affirm the circuit court's judgment.

¶ 29	Affirmed.

¶ 30	JUSTICE PUCINSKI, specially concurring:

¶ 31	The result in this case is appropriate. I worry though that in a different case the way the officer obscured the view of the defendant by standing in front of the dash cam would seriously impair the court's ability to see how the defendant responded to requests, orders, and testing. I hope that police will stop standing in a way that eliminates the fact finder's ability to see what actually happened.